Good morning, Your Honors. May it please the Court, my name is Kevin Brahm. I represent the appellant in this case, Mr. Michael Logan. Your Honors, I first want to begin with an apology to the Court, and let me explain. In preparing this weekend, I discovered that a recent Supreme Court case regarding interpretation of part of the bank fraud statute might have some negative application to part of the argument I've raised, and I want to bring that to your attention, and if I may explain what that is. Earlier this summer, the Supreme Court in the Laughrin v. United States case entered an opinion interpreting one of the two sections of the bank fraud statute. The bank fraud statute itself has a Part 1, which says to money, funds, credits, securities, etc. owned by or under the custody of a financial institution by means of false or fraudulent pretenses. There apparently has been a circuit split. I don't believe the Fourth Circuit was part of that split. It did not really address the issue, but a split as to whether that Section 2 required proof by the government of specific intent to defraud the bank. I think the case law had been pretty clear that as to the first section of the Bank Fraud Act, there was a requisite element of specific intent to defraud the financial institution itself. So the Supreme Court in its decision at the end of June of this year in Laughrin found that as to Subsection 2 of the Bank Fraud Statute. Well, why didn't you, you could have brought this to our attention well before the day of argument. Yes, I apologize, and the reason is the briefs were back, finished back in February, and I wasn't vigilant as I should have been, and when the opinion came out in late June. Did you submit this to Supplemental Authority? Well, the reason not is, as I'll explain, the way the charges are framed in this case, you have, first of all, no substantive bank fraud counts. You have substantive wire fraud counts. As to those counts, I believe the case law, as we stated, is very clear. There's a specific intent to defraud element of those counts. And then as to bank fraud, the way this charge in this case is part of the first count conspiracy, which identifies both bank fraud and wire fraud as the underlying criminal acts of the conspiracy, the bank fraud reference doesn't designate by separate statute sections. It does use both languages. You know, this is a, aside from the tardiness of bringing this up, I'm not sure it helps you, because the evidence here is simply overwhelming in terms of what your client was up to. And I bring it to your court's attention. I just don't, I don't see this as much of a question of law. I just think it's a question of, it's basically just down to a jury question as to whether your client intended, he defrauded everyone in the neighborhood. He defrauded the borrowers and he defrauded the credit union and everything. And the question is whether he intended to do so. And, you know, there was overwhelming evidence before the jury that he knew what he was up to. They were bribing credit union officials. They were making false representations to the borrowers. And he's up to his neck in fraud. You don't think this case does help you, do you? No, and that's why I'm trying to apologize. You're diving on your sword. Well, in a sense, it does help. You don't think it helps you? You think you're... You overstated in your brief. You're abandoning that part of it. Well, what we stated in the brief was... What did they have to prove? They had to prove intent to defraud. It has to be intent to defraud. And that's the point. And you're saying there's not sufficient evidence of an intent to defraud. And that's the question that you lost on motions in the district court. You lost it before the jury. And you're saying that up here. And that's what that gets down to, whether there is enough. And it looks pretty dim for your fellow. Did you all try the case? Yes. You did? The public defender had it? We had it from the outset. We did try the case. And I appreciate the candor of the court in expressing your views quickly about the facts of the case. Obviously, we respectfully don't... There's a lot of bad-looking evidence. And you say that some of it shouldn't have come in. Well, I think there's bad-looking evidence in that. Certainly, we don't dispute. What you have here clearly is a partnership between my client, Mr. Logan, and Mr. Bingham. And we understand that the reality of that relationship of a partnership often entails, but not necessarily always, the partners knowing what each other are doing. So, our contention in this case is because of the somewhat unique characteristics of each of these two partners. There was not a situation where they necessarily knew what each other were doing. And more importantly, the issue we've presented and we're presenting to you... I think that a sufficiency argument is always a big uphill battle for a defendant when they've been convicted of a trial. We understand that reality. What I'm asking this court to look at is because of the unique characteristics of the individuals involved, we don't believe there's enough evidence to show that Mr. Logan had the intent because he didn't have the knowledge that Mr. Bingham and also Mr. Bingham's surrogate, the inside man, Mr. Nixon, Mr. Bingham's friend... We're saying that they clearly acknowledge and we believe the evidence is overwhelming that they committed a fraud on Navy Federal. The question we've raised is we don't believe that the evidence was sufficient that Mr. Logan was sufficiently knowledgeable about what they were doing vis-a-vis Navy Federal to make him a knowing participant. He was lying to everybody and he got all the money as it turns out. Well, certainly we don't agree with that and as we've laid out... I know you don't agree with it, but I wouldn't expect... This case wasn't submitted to the jury under any kind of negligence theory. I mean, the mens rea was made perfectly clear that he was either going to be an actual knowing intent or willful blindness. Well, we didn't suggest negligence in that respect. Certainly... There wasn't any negligence of instruction. No, and that's not really an issue. The concern we had, first of all, was... And, of course, what we initially... Our primary argument, the jury would be, again, as I'm suggesting to you, that although they are partners and there's no dispute about that, they basically had not a Chinese wall in a formal sense, but Mr. Bingham, because of his prior employment with Navy Federal, his knowledge about the loan process... Mr. Bingham was the insider at the credit union, right? He was kind of the recent insider. He actually left Navy Federal, gone to a job with Veterans Administration, but also in a loan officer capacity, and his previous colleague, Mr. Nixon, who was also charged separately... Wasn't Logan in on the bribes? Mr. Logan, our contention is, and we believe the evidence showed again to Mr. Bingham, Mr. Logan would make payments at Mr. Bingham's direction to... Mr. Logan was paying the money. Yes. Your client was paying the money to the guys at the bank. But he says that he was just doing it because Bingham told him to. Well, what I want the court to consider, as you look at the record, the key witness for the government was Mr. Bingham. And I'd ask you to carefully consider, when you look at his testimony in total, I think it actually gives a very good overview... And he pled to something? Yeah, he pled also to conspiracy. He pled and then cooperated and testified against Logan. Exactly. Yes, he certainly did. He's a turncoat. A men in coat conspirator. Right. And when you look at his testimony, again, he's a key government witness. He lays out what I believe is a pretty accurate overview of what the relationship was between he and my client, Mr. Logan. Mr. Bingham leaves Navy Federal Credit Union employment, moves to Georgia, takes a job with the Veterans Administration, also in a lone officer capacity. He moves into a neighborhood where Mr. Logan lives. They become friends. They decide to start a business together, which Mr. Bingham insisted at trial, and no one disputed, that business started off as a legitimate business called Cash Money Brothers that was going to manage properties, was going to try to obtain partners who had good credit. They could buy properties, manage them, rent them out, fix them up, possibly flip them later if the market went up. And Mr. Bingham stated that was a legitimate business that they started and that when the question of let's get financing for purchasing properties came up, both Mr. Bingham and Mr. Logan did not have a good credit record. So they needed to bring in partners, people they believed to have good credit records, who could qualify for loans. And then Mr. Bingham was the one who handled loan processing with Navy Federal because that's where he had been employed and he knew people there. And then as Mr. Bingham's testimony establishes, as this... Where are we going with all this? I mean, it seems to me where we're going is where you wouldn't want to go because we're just recounting the evidence that was submitted to the jury. Well, we're about to get to an important point. I appreciate that, Your Honor. As Mr. Bingham's testimony progressed as to the chronology, Mr. Bingham is in touch with Mr. Nixon who is at Navy Federal. And initially, Mr. Bingham is saying we're going to start submitting these loans. Well, Mr. Logan knew what Mr. Bingham was up to. This is the point, Your Honor. Mr. Bingham's acknowledgment in his own testimony is when they initiated the loan process through Mr. Nixon, the request of Mr. Nixon was, let's not falsify loans. They didn't suggest that. It's, can you basically take our loan from the bottom of the pile and bring it to the top of the pile so we can get quicker processing? And would you do that for us? And that, even Mr. Nixon in his trial testimony and other government witnesses... But that's what the bribes were paid for. To get them to the top of the stack. Right. Well, I wouldn't use the term bribe, but... I know you wouldn't like the term bribe, but we have to view it in the light most favorable to the government. And they called it a bribe, and the jury must have thought it was a bribe. And even under what you say, it's a bribe. I mean, they were influencing the decisions of the bank. That would be correct. Did they ever get them from the bottom of the stack to the top of the stack? Exactly. So they get approved quicker. That's right. And that's the point I'm trying to make is when you look at Mr. Bingham's testimony, at the outset, what Mr. Logan would have known would be Mr. Bingham has someone at Navy Federal working there who can get these loans moved more quickly, and we're going to pay him a fee bribe, if you want to call it that. I don't... That's what they argued about it. I'm not... It's not my term. It was used at the trial. It's in the briefs. I understand that, Your Honor. I mean, the government calls it a bribe. And they argued it's a jury that was a bribe, right? We don't dispute the payments made. Payments made, and they argued to the jury they're bribes. And the jury found Mr. Logan guilty. So they must have... They must... Taking the view most favorable to the government, they found him to be bribed. Well, the point we're trying to make... Now, that might be a slang term in the context of what really happened here, but... Well, we don't dispute that... The jury agreed with the government's theory. Well, I guess the point we're trying to make is that once this process began where it's moving the loans from the bottom to the top of the stack, then Mr. Bingham's testimony indicated that there were some problems with the processing of some of the loans that's not going through and that he was in touch... Mr. Bingham was in touch with Mr. Nixon and they basically arranged that there's going to be falsified information in some of these loan applications. We just... I think this was the essence of Judge King's point. We're just rehashing evidence that was before the jury. And, you know, I mean, that's your problem is that you get an adverse jury verdict. I know you don't like certain evidence that came in. You didn't like the fact that evidence from the testimony from the individual borrowers came in, but it was... I didn't see the problem with that. It was all part of one... It was all wrapped up in one scheme and the defrauding the borrow... I mean, defrauding the credit union and defrauding the borrowers, each was necessary to accomplish the conspiracy in its totality because without defrauding the borrowers, he would never have gotten them to submit the applications without telling them that these loan proceeds were going to be used to manage the property when, in fact, they were used for his personal benefit. So why, for example, was it erroneous for him to... for the district judge to admit testimony from the borrowers because they were all part of this... they were all part of this scheme? You know, we didn't object to the testimony of borrowers that showed the processing portion of the case, that is, how they were approached and they agreed to become partners and to sign on certain loans. It was some of the other testimony where they then were, in effect, complaining about certain promises they claim Mr. Logan made that he didn't keep to them about the maintenance and management of the properties we thought went beyond what was relevant to the fraud charge. So the only... and wrapping up, my time is about to expire. The point we're trying to make and I understand what your comments are is that once you look at, again, Mr. Bingham's testimony, when there's a shift in conduct with Navy Federal to actually put false information in applications, which is really the heart of the fraud, Mr. Bingham doesn't suggest or testify, nor does Mr. Nixon, that they discussed that with Mr. Logan. So that means Mr. Logan's left thinking is that these fellas said that he's... that Mr. Logan supplied him with a copy of the loan application and they went through a litany of false statements on it. Like, it says you work for Lotor Investors. Is that correct? No. It says your gross monthly pay is $5,200 a month. Is that correct? No. It says you're the chief finance officer of Lotus Investors. Is that correct? No. It says your business phone is and they give them... Is that what your phone number was? No. I agree that... He says Logan gave him that stuff and it's all false on the loan application. That was a testimony, yes, of Locksley Douglas. He's the only person who came forward and said anything like that and as I think you see in the briefs, he also acknowledged on earlier occasions having said things contrary. So, again, in looking at the totality of the evidence, our position would be that there's not enough substantial evidence to show the required intent and knowledge of Mr. Logan. Thank you, sir. Thank you. Appreciate it. Mr. Gillian? May it please the court. My name is Alex Nguyen for the United States and I'll be brief unless the court has any questions. But essentially, Mr. Brehm is raising three arguments, none of which have merit. First, on the sufficiency of the evidence claim. He's trying to litigate here, re-litigate the case here and that's not appropriate. But is there to this other than a sufficiency of the evidence claim where we're simply rehashing the evidence at trial? Yes, correct, Your Honor. Well, the evidence in this case here shows that there's direct evidence of the defendant intending to defraud the bank. He submitted false membership applications. He personally submitted false loan applications, which was confirmed by witness testimony. He personally submitted documents to the bank, quick claim deeds, lease applications that were false and he bribed, personally bribed. I mean, there's a, you know, Judge King touched on it, but there's an avalanche of evidence in this case, both vis-a-vis the credit union and the bank and vis-a-vis the borrowers. He's defrauding everybody. That's correct, Your Honor. And for that reason, the sufficiency of the evidence claim obviously fails. Did you try the case? Yes, Your Honor. But he says that you, there was evidence admitted that was erroneously admitted. That's the second point that you're going to get to. And what I was concerned about, what I want to focus on, is that you throw in an alternative argument there that it was harmless error. You argue harmless error in this case. And I was flabbergasted that the government would come in in this case and say, well, maybe we did overtry it, but if we did, it was harmless. No, Your Honor. The thrust of the argument would be on the first... I was surprised you argued harmless error in this case. We rest mainly, Your Honor, on the relevance. It's clearly relevant to the scheme. You lie to the bank so you get the money to the straw borrowers. That was just a precautionary step. That's correct, Your Honor. I was trying to protect the record. But essentially, it's impossible, as you pointed out, to commit this fraud scheme as described explicitly in the superseding indictment without talking about what was told to the borrowers who were... And they went to the same well and asked the borrowers to keep applying for more loans. There is no error. I'm sorry, Your Honor? There is no error. Correct, Your Honor. That would be our position. And then, finally... You want to stick with that now? Thank you, Your Honor. You got a willful blindness instruction. They say that you shouldn't have gotten that. Well, Your Honor, the defendant, as you saw, basically claimed and told you that the defendant was the president of Cash Money Brothers and there was no way he knew fraud was being committed by his co-conspirators and his partners. And that argument, which was made at trial, makes the willful blindness instruction particularly appropriate. He said, I had no idea of any of this. He said, I didn't know that Cash Money Brothers  to commit fraud. This all came as a surprise to me, so he's setting it up. Right, Your Honor. And so, we cite a lot of evidence from a number of Fourth Circuit cases that show that wherever the defendant's claiming or disavowing knowledge of the fraud, that there's obvious red flags here, bribes being paid, loans defaulting, no repairs being made, that that instruction is particularly appropriate. Judge O'Brady made clear that carelessness or negligence or whatever was absolutely not a basis on which to convict. That's correct, Your Honor. And the judge specifically used the O'Malley instruction which says, you may not conclude that the defendant has knowledge, however, from proof of a mistake, negligence, carelessness, or belief in an inaccurate proposition. So, the jury instruction was plainly appropriate and appropriately given in this case and we ask the court to approve it. Do you have any further? Anything further? Not unless the court has any questions. Judge Hamilton, do you have any questions? No, sir. Judge King. Thank you, Your Honor. Thank you. Mr. Breen. Thank you, Your Honor. It's just a quick point on the what's commonly called deliberate ignorance or willful blindness. The concern we raised in this case was not that the language of the instruction was in any way incorrect. It's just that it simply shouldn't have been given. I understand from the court's comments. The circumstances didn't warrant a willful blindness instruction. Yes. Again, with the emphasis we make is that under the law a willful blindness instruction may be appropriate although cases have said it should be rarely used and if it's appropriate it's when there's evidence the defendant in question purposely did something to try and avoid knowing as opposed to simply saying I didn't know. That just doesn't open the door in every case. He's sort of saying I thought their position was he was claiming that your man Bingham hoodwinked him or something and got him into this mess. No, it wasn't a hoodwink. Again, they started a legitimate business as Mr. Bingham himself testified. Bingham was down there bribing the people at the bank and your fellow just innocently paid him $3,500 or whatever it was $700 per application and all he did was innocent because he was relying on Bingham which seemed like a pretty good place to fill in a willful blindness instruction for a judge for a government task force and for the judge which we review that for abuse of discretion. Right? Whether the giving whether the willful blindness instruction was appropriate in these circumstances. That is correct. It is abusive. You don't contest the legal principles contained therein. You just say in these circumstances it was an abuse of discretion to give.  The language of the instruction actually used was correct language. The issue is should have been given at all. We contend it should not. Thank you so much, Your Honor. We will come down to the recovery council and then we will move into our last case.
judges: J. Harvie Wilkinson III, Robert B. King, Clyde H. Hamilton